**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**MAY SESSION, 1996**

FILED

October 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **MICHAEL EUGENE McBEE,** | ) | **C.C.A. NO. 03C01-9509-CR-00276** |
| **and** | ) | |
| **JEFFREY EUGENE DUNLAP** | ) | |
| Appellants, | ) | |
| | ) | |
| | ) | **KNOX COUNTY** |
| **VS.** | ) | |
| | ) | **HON. RAY L. JENKINS** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | **(Direct Appeal - Aggravated Robbery)** |

FOR THE APPELLANT:

LESLIE M. JEFFRESS
Attorney for Appellant Dunlap
1776 Riverview Tower
900 S. Gay Street
Knoxville, TN 37902

KIIMBERLY A. PARTON
Attorney for Appellant McBee
407 Union Avenue
Suite 209
Knoxville, TN 37902

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

RANDALL E. NICHOLS
District Attorney General

ROBERT L. JOLLEY, JR.
Assistant District Attorney
City-County Building, Ste. 168
400 Main Street
Knoxville, TN 37902-2405

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On December 14, 1994, a Knox County Criminal Court jury found Appellants Jeffery Dunlap and Michael McBee each guilty of two counts of aggravated robbery under Tennessee Code Annotated Section 39-13-402 (1991). As Range III persistent offenders, Appellants were both sentenced to thirty years imprisonment on each count. The trial court ordered the sentences to run consecutively for an effective sentence of sixty years for each Appellant. On appeal, Appellants raise three issues for review: (1) whether the evidence presented at trial was sufficient as a matter of law to sustain the convictions; (2) whether the trial court erred in refusing to allow certain evidence to be admitted; and (3) whether the sentences were excessive in length.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

In the early morning hours of May 23, 1993, Patrol Officer Larry Gilland of the Knoxville Police Department responded to a 911 call at the residence of Ronnie and Margaret Ridenour. Upon arriving at the residence, Officer Gilland knocked on the front door. Hearing no response, he contacted his dispatcher to request that a telephone call be made to the location. Soon thereafter, Officer Arman joined Officer Gilland at the Ridenour residence. Subsequently, the door was answered by Margaret Ridenour. Ms. Ridenour was hysterical; she yelled that her husband and grandchildren had been

robbed at knife point and were being held hostage. Upon entering the residence, Gilland and Arman saw Appellant Dunlap in the living room talking on the telephone, telling the dispatcher that the police were not needed. As Gilland went down the hallway were Ms. Ridenour claimed hostages were being held, Mr. Ridenour came out of a bedroom and yelled that someone had run across the hall into another bedroom. Gilland heard a window break and entered that bedroom. In the bedroom, Gilland found Appellant McBee crouched under a broken window which had bars on the other side of it. McBee was found with $827 cash, three rings, two gold chains, a man's wrist watch, a gold cross, a cigarette lighter, food stamps, and a food stamp eligibility card belonging to Sheila Ridenour. In addition, two knives were found under McBee, and he was wearing gardening gloves on his hands.

At trial, Mr. and Ms. Ridenour testified that they were lying in bed when, at around two a.m., they heard a knock on the door. When Mr. Ridenour heard a man call out his name, he unlocked the door to his house. Two men, later identified as Appellants Dunlap and McBee, forced their way into the house and held a knife to Mr. Ridenour. Dunlap went into the back of the house and brought Ms. Ridenour to where Mr. Ridenour was being held. Both of the Appellants had knives, and one of them poked Mr. Ridenour in the head with his knife causing a small puncture wound. The Appellants then demanded money and jewelry from the Ridenours. The Ridenours took off what jewelry they were wearing and gave it to Dunlap and McBee but the couple denied having any money. Then McBee took Ms. Ridenour to the back bedroom where her purse was located. McBee took $690 from Ms. Ridenour's purse. Once the Appellants discovered that the Ridenours had lied

about not having any money, the Appellants became angry. Ms. Ridenour tried to appease the Appellants by telling them that if they would let her call her brother she could get more money for them. The Appellants allowed Ms. Ridenour to use the telephone. Ms. Ridenour called 911 instead of her brother. Soon thereafter, the police arrived and arrested the Appellants.

According to the Appellants' theory of the case, the event the Ridenours claimed was a robbery was in fact "a drug deal gone bad." Mr. Ridenour allegedly had sold the Appellants bad cocaine and the Appellants were invited to the Ridenour home to rectify the problem. At the conclusion of the trial, the jury found Appellants guilty of two counts each of aggravated robbery.

## II. SUFFICIENCY OF THE EVIDENCE

Appellants first allege that the evidence presented at trial is not legally sufficient to sustain convictions for aggravated robbery. When an appeal challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992), cert. denied, 114 S. Ct. 740 (1994); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not reweigh the evidence, re-evaluate

the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Hatchett, 560 S.W.2d 627 (Tenn. 1978); State v. Townsend, 525 S.W.2d 842 (Tenn. 1975). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401 (1991). Aggravated robbery is a robbery "(1) accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to believe it to be a deadly weapon; or (2) where the victim suffers serious bodily injury." Id. § 39-13-402. In order to sustain the convictions for aggravated robbery in this case, the State had to prove beyond a reasonable doubt the above-mentioned elements of aggravated robbery. See Evans, 838 S.W.2d at 190-91. When Appellant McBee was apprehended by the police, $827, jewelry, and a food stamp eligibility card belonging to Sheila Ridenour, Ms. Ridenour's daughter, were found on McBee's person. Two hunting

knives, which fit the description given by the Ridenours of the knives used by the robbers, were found underneath McBee. In addition, McBee was apprehended wearing gloves. McBee also attempted to escape from the Ridenour home by breaking the back bedroom window when the police arrived. He was prevented from escaping by the bars on the window. When the police entered the Ridenour home, Dunlap was on the telephone telling the police dispatcher that police assistance was not needed. Additionally, Mr. and Ms. Ridenour testified about the horror they faced as they were held at knifepoint and told to hand over their jewelry and money.

The Appellants argue that there are too many inconsistencies in the Ridenour's testimony for a rational trier of fact to conclude beyond a reasonable doubt that they committed aggravated robbery. As stated previously, determining the credibility of witnesses and resolving conflicts in the proof are matters entrusted exclusively to the jury. Sheffield, 676 S.W.2d at 547. From the guilty verdict returned against the Appellants, it appears the jury attributed greater credibility to the Ridenour testimony than the Appellants' proof. The decision of the jury is adequately supported by the record. Thus, we find that, when viewed in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that Appellants were guilty of aggravated robbery.

### III. DENIAL OF ADMISSION OF EVIDENCE

Next, Appellants argue that the trial court erred in refusing to allow them to present evidence showing that Mr. and Ms. Ridenour were in possession of

drugs in violation of their Methadone program. According to Appellants' theory of the case, if the Ridenours possessed contraband drugs, they must have been engaged in illegal narcotics trading. This, Appellants argue supported their claim that the Ridenours were not robbed but instead were involved in "a drug deal gone bad."

In fact Appellant Dunlap took the witness stand and testified at length that the altercation with the Ridenours was a drug deal done awry. The jury apparently rejected this testimony in favor of the Ridenours' version of events. Nevertheless, Appellants argue they should have been allowed to introduce extrinsic evidence of the Ridenours alleged drug dealing as impeachment following the defense cross-examination of the couple. Both Mr. and Ms. Ridenour denied the incident in question involved drug dealing.

Impeachment with specific instances of conduct is governed by Tenn. R. Evid. 608(b) which provides in pertinent part:

> (b) Specific Instances of Conduct. -- <u>Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence.</u> They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness . . . . The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:

(1) The court <u>upon request</u> must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;

(2) The conduct must have occurred no more than ten years before commencement of the action or prosecution . . . . (emphasis supplied).

It is clear that any conduct on the part of the Ridenours involving narcotics was not provable through extrinsic evidence for purposes of impeachment unless the conduct formed the basis of a criminal conviction.[1] Thus, the trial court properly excluded this evidence.

Appellants also argue they should have been allowed to make a proffer of proof for the record as to the nature of the extrinsic evidence excluded for impeachment purposes. Although ordinarily a proffer of proof concerning excluded evidence should be allowed by the trial court, it is not reversible error to deny such a proffer where it is obvious the evidence could not possible be competent. <u>Alley v. State</u>, 882 S.W.2d 810, 816 (Tenn. Crim. App. 1994). As discussed earlier, extrinsic evidence of the Ridenours alleged drug dealing which was not the subject of a criminal conviction cannot possibly be admitted to impeach their testimony,  Therefore, denial of a proffer of proof as to the nature of the evidence was proper.

_____

[1]Appellants make no claim that the evidence they were not allowed to present involved criminal convictions.  Indeed Ms. Ridenour was impeached with her record of criminal convictions for dealing in narcotics.

## IV. SENTENCING

Next, Appellants challenge their sentences as excessive. Specifically, Appellants argue that the trial court erroneously applied several enhancement factors and ordered that the sentences run consecutively. When an appeal challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review with a presumption that the determination of the trial court was correct. Tenn. Code Ann. § 40-35-401(d) (1990). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to demonstrate such consideration, review of the sentence is purely de novo. Id. If appellate review reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this Court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In reviewing a sentence, this Court must consider the evidence, the presentence report, the sentencing principles, the arguments of counsel, the nature and character of the offense, mitigating and enhancement factors, any statements made by the defendant, and the defendant's potential for rehabilitation or treatment. State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993). The defendant bears the burden of showing the impropriety of the sentence imposed. State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993).

## A. Length of Sentence

In the absence of enhancement and mitigating factors, the presumptive length of sentence for a Class B, C, D, and E felony is the minimum sentence in the statutory range while the presumptive length of sentence for a Class A felony is the midpoint in the statutory range. Tenn. Code Ann. § 40-35-210© (Supp. 1996). Where one or more enhancement factors apply but no mitigating factors exist, the trial court may sentence above the presumptive sentence but still within the range. Id. § 40-35-210(d). Where both enhancement and mitigating factors apply, the trial court must start at the minimum sentence, enhance the sentence within the range as appropriate to the enhancement factors, and then reduce the sentence within the range as appropriate to the mitigating factors. Id. § 40-35-210(e). The weight afforded an enhancement or mitigating factor is left to the discretion of the trial court so long as the trial court complies with the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 and its findings are supported by the record. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995).

## 1. Appellant Dunlap

Appellant Dunlap was convicted of two counts of aggravated robbery, a Class B felony. Tenn. Code Ann. § 39-13-401(b). As a Range III persistent offender convicted of a Class B felony, Appellant's statutory sentencing range was between twenty and thirty years. Id. § 40-35-112(c)(3). The trial court found that the following enhancement factors applied:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
(5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;
(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
(11) The felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury; and
(13) The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction:
    (B) Parole.

Id. § 40-35-114(1), (5), (8), (11), (13) (Supp. 1996).

The trial court found no mitigating factors. Based upon the foregoing enhancement and mitigating factors and relevant sentencing principles, the trial court imposed a sentence of thirty years for each count, and the sentences were ordered to run consecutively for an effective sentence of 60 years.

Appellant Dunlap argues that enhancement factor (5) should not apply because exceptional cruelty is an element of every aggravated robbery and that it must be presumed that the legislature included this consideration in the increased penalties for aggravated robbery. This Court has consistently rejected the notion that enhancement factor (5) is an element of aggravated robbery, and we have held that this factor may be used in an appropriate case to enhance an aggravated robbery sentence. State v. Sanderson, Davidson County, No. 01-C-01-9308-CR-00269, (Tenn. Crim. App., Sept. 27, 1995), perm. app. denied, (Tenn. Feb. 5, 1996); State v. Crow, Humphreys County, No. 01-C-01-0110-CC-00304 (Tenn. Crim. App., July 8, 1993).

-11-

However, in order for application of enhancement factor 5 to be appropriate, the record must reflect cruelty over and above that inherently attendant to the crime of which a defendant is convicted. State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995). The behavior of Appellants demonstrates exceptional cruelty. In an apparent attempt to prevent their identification Appellants, in the presence of the Ridenours, discussed killing the family. The robbery was accomplished by this time and thus any threat to kill the family was not necessary for the completion of the primary crime. Secondly, both Appellants threatened to kill the small children present in the residence should the Ridenours fail to be forthcoming with their property. Threatening the lives of the adults was bad enough, but threatening to kill their small grandchildren if the Ridenours failed to cooperate represents a type of cruelty that is reprehensible. In addition, Appellants told Ms. Ridenour if she did not remove one of her rings, her finger would be cut off. We find application of this factor was appropriate.

Appellant Dunlap further asserts that enhancement factor (11) should not apply. He argues that although he was previously convicted of armed robbery, he did not injure anyone in the commission of that crime. He supports his contention with an affidavit from one of the alleged victims of the prior crime which states that Appellant did not injure him. A review of the record reveals however that the victim was injured in a robbery to which Appellant Dunlap had pleaded guilty. Under these circumstances application of enhancement factor 11 was appropriate.

The record reflects the appropriate application of five (5) enhancement factors. No mitigating factors appear. Under the circumstances a sentence of thirty (30) years is amply justified.

## 2. Appellant McBee

Appellant McBee was convicted of two counts of aggravated robbery, a Class B felony. Tenn. Code Ann. § 39-13-401(b). As a Range III persistent offender convicted of a Class B felony, Appellant's statutory sentencing range was between twenty and thirty years. Id. § 40-35-112(c)(3). The trial court found that the following enhancement factors applied:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
(3) The offense involved more than one (1) victim;
(5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;
(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
(11) The felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury; and
(13) The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction:
　　(B) Parole.

Id. § 40-35-114 (1), (2), (3), (5), (8), (11), (13) (Supp. 1996).

The court found no mitigating factors. Based upon the foregoing enhancement and mitigating factors and relevant sentencing principles, the trial court imposed a sentence of thirty years for each count, and the sentences were ordered to run consecutively for an effective sentence of 60 years.

Appellant McBee argues that enhancement factors (2), (3), (5), and (11) should not have been applied by the trial court. Evidence presented at trial clearly supports the trial court's application of enhancement factor (2), which provides that the defendant was a leader in the commission of the crime. Appellant McBee held a knife to Mr. Ridenour and demanded money and jewelry. McBee ordered Appellant Dunlap to take Mrs. Ridenour's jewelry. He also ordered Appellant Dunlap to hold Mr. Ridenour while he took Mrs. Ridenour in the back bedroom and robbed Mrs. Ridenour of the contents of her purse. Apparently, it was Appellant McBee that was directing the robbery. McBee was found with the Ridenours' money and jewelry. Thus, we find that the application of enhancement factor (2) by the trial court was proper.

Appellant McBee also challenges the application of enhancement factor (3), which provides that the offense involved more than one victim. Case law establishes that this enhancement factor may not be applied when a defendant is separately convicted of the offenses committed against each victim. State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). Thus, the application of this enhancement factor could not rest on the fact that both Mr. and Mrs. Ridenour were victims of the aggravated robbery. The State argued at McBee's sentencing hearing that this enhancements factor should apply because Appellant McBee threatened to harm the Ridenour's grandchildren if they did not comply with his demands for money and jewelry. In State v. Raines, this court found that the term "victim" as used in this enhancement factor means a person injured, killed, or whose property was stolen or destroyed. 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). Since under the circumstances of this case, the Ridenour grandchildren cannot be

considered victims for the purposes of this enhancement factor, the application of enhancement factor (3) was erroneous.

Appellant McBee further maintains that enhancement factor (5), which provides that a victim was treated with exceptional cruelty, should not have been applied. For the reasons given in the discussion of the application of enhancement factor (5) to Appellant Dunlap's sentence the application of this enhancement factor to Appellant McBee's case was also appropriate.

Finally, Appellant McBee challenges the application of enhancement factor (11). At Appellant McBee's sentencing hearing, the State relied upon McBee's conviction for aiding and abetting rape for the application of this enhancement factor. Appellant argues that this was improper as he did not commit the rape himself but was only an accessory after the fact. It is unnecessary to decide whether or not a conviction for aiding and abetting rape can support the application of this enhancement factor. The evidence presented at Appellant McBee's sentencing hearing includes proof that Appellant was convicted of aggravated assault in 1986. This conviction is sufficient to find that the application of enhancement factor (11) was proper.

Although the trial court improperly applied one enhancement factor, six enhancement factors were properly applied. The record shows that Appellant has been convicted of seven felonies, and has spent his entire adult life in prison. In addition, he committed the aggravated robbery of the Ridenours while on parole. In light of the strength and number of these enhancement

factors, we conclude that the trial court's imposition of a thirty year sentence for each count of aggravated robbery was justified and reasonable.

## B. Consecutive Sentencing

Appellants also maintain that the trial court erred in ordering their sentences to be served consecutively. The trial court has the discretion to impose sentences concurrently or consecutively. Tenn. Code Ann. § 40-20-111(a) (1990). The imposition of consecutive sentences is appropriate if the defendant has been convicted of more than one offense and the trial court finds, by a preponderance of the evidence, one or more of the following criteria:

(1) The defendant is a professional criminal who has knowingly
devoted himself to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record of criminal activity is
extensive;
(3) The defendant is a dangerous mentally abnormal person so
declared by a competent psychiatrist who concludes as a result of an
investigation prior to
sentencing that the defendant's criminal conduct has been
characterized by a pattern of repetitive or compulsive behavior with
heedless indifference to consequences;
(4) The defendant is a dangerous offender whose behavior indicates
little or
no regard for human life, and no hesitation about committing a crime
in which the risk to human life is high;
(5) The defendant is convicted of two (2) or more statutory offenses
involving sexual abuse of a minor . . . ;
(6) The defendant is sentenced for an offense committed while on
probation; or
(7) The defendant is sentenced for criminal contempt.

Id. § 40-35-115.

### 1. Appellant Dunlap

In imposing consecutive sentencing, the trial court noted Dunlap's record of extensive criminal activity. Dunlap has four second degree burglary convictions, one conviction for third degree burglary, and one conviction for armed robbery. His record also includes various other felony convictions. Under these circumstances a finding that Dunlap has an extensive criminal record is clearly warranted.

The trial court also found that Appellant was a dangerous offender as a ground for imposing consecutive sentences. Tenn. Code Ann. § 40-35-115 (b)(4). However this Court held in State v. Wilkerson, this finding standing alone does not justify consecutive sentences. A trial court may not impose consecutive sentences based upon the defendant's dangerous offender status unless the record establishes that:

(a) the defendant's behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(b) the circumstances surrounding the commission of the offense were aggravated;
(c) consecutive sentences are necessary to protect society from further criminal conduct by the defendant;
(d) consecutive sentences reasonably relate to the severity of the offenses committed; and
(e) the sentence is in accord with the principles set forth in the Sentencing reform Act.

State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995); see also State v. Ross, No. 03C01-9404-CR-00153, 1996 WL 167723, at *9 (Tenn. Crim. App. Apr. 10, 1996).

In the instant case Dunlap, a relative of the Ridenours, demanded money and jewelry by holding the couple at knifepoint. At one point Ms.

-17-

Ridenour was told her husband had been killed and that she was next. Threats were made to kill the small children in the residence, as well as a threat to cut off Ms. Ridenour's finger. Clearly the circumstances are aggravated, Dunlap has no hesitancy about committing such a crime and consecutive sentencing reasonably relates to the severity of the offense. Finally, Dunlap's prior criminal record indicates that consecutive sentences are necessary to protect society from this individual.

### 2. Appellant McBee

The trial court found that Appellant McBee was a professional criminal who knowingly devoted himself to criminal acts as a major source of livelihood. Tenn. Code Ann. § 40-35-115(1). The record clearly establishes Appellant McBee as a professional criminal. Appellant McBee has been incarcerated almost his entire adult life. The probation officer that prepared McBee's pre-sentence report testified at McBee's sentencing hearing that he had never held a job. Therefore, we find that the imposition of consecutive sentences on the ground that McBee is a professional criminal was proper.

The trial court also noted McBee's record of extensive criminal activity as a basis for ordering consecutive sentences. Tenn. Code Ann. § 40-35-115(2). He has numerous prior felony convictions. These convictions include a conviction for two counts of aggravated robbery, a conviction for aiding and abetting rape, a conviction for simple robbery, a conviction for second-degree burglary, two convictions for escape, a conviction for aggravated assault, and a conviction for armed robbery. The proof here is more than sufficient to

support the trial court's finding that McBee's criminal activity was extensive. Based on this finding, the trial court properly imposed consecutive sentences.

The trial court also found that McBee was a dangerous offender as a ground for imposing consecutive sentences. Tenn. Code Ann. § 40-35-115(b)(4). However, as we have mentioned previously, this finding, standing alone does not justify consecutive sentences. A trial court may not impose consecutive sentences based upon the defendant's dangerous offender status unless the record established the criteria set forth in State v. Wilkerson and State v. Ross. See Wilkerson, 905 S.W.2d at 938-39; Ross, 1996 WL 167723, at *9.

From the record, it is clear that McBee's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. McBee participated fully in the threats and cruelty which characterize this home invasion. In addition it is obvious that prior incarceration has not had an impact on McBee's behavior. Consecutive sentencing reasonably relates to the severity of this offense and is necessary to protect society from further criminal activity by McBee.

Accordingly, the convictions and sentences of both Appellants are affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
JOHN K. BYERS, SENIOR JUDGE