IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2000

**STATE OF TENNESSEE v. BRUCE ADAMS**

**Direct Appeal from the Circuit Court for Blount County**
**No. C-11410, C-11411     D. Kelly Thomas, Judge**

**No. E2000-00298-CCA-R3-CD**
**December 8, 2000**

The defendant, Bruce Adams, appeals his convictions of resisting arrest and disorderly conduct and the manner of service of his effective six-month sentence. The trial court ordered ten days of confinement and probated the balance of the sentence. The resisting arrest conviction is supported by sufficient evidence, and we affirm that conviction and the sentence, including the confinement term. However, because we find insufficient evidence to support the disorderly conduct conviction, we reverse it and dismiss that charge.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed as to resisting arrest charge,**
**Reversed as to disorderly conduct; disorderly conduct charge Dismissed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

Shawn G. Graham, Maryville, Tennessee, for the Appellant, Bruce Adams.

Paul G. Summers, Attorney General & Reporter; Clinton J. Morgan, Nashville, Tennessee, Michael; L. Flynn, District Attorney General; and William Reed, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

        The defendant, Bruce Adams, appeals his Blount County Circuit Court convictions of resisting arrest and disorderly conduct. See Tenn. Code Ann. § 39-16-602 (1997) (resisting arrest); § 39-17-305 (1997) (disorderly conduct). After a bench trial, the trial court imposed concurrent sentences of six months for resisting arrest and 30 days for disorderly conduct, to be suspended after ten days of confinement. In this appeal, the defendant raises two issues: (1) whether the evidence is insufficient to support the convictions, and (2) whether the trial court erred in ordering the defendant to be incarcerated. After review of the record, the briefs, and the applicable law, we affirm the conviction and sentence on the resisting arrest count but reverse the disorderly conduct conviction. The disorderly conduct count shall be dismissed.

In lieu of a verbatim transcript of the evidence presented at trial, the parties have prepared and filed as a part of the record on appeal a "statement of the evidence." See Tenn. R. App. P. 24(c). According to this statement, the state's first witness, Judy Barca, testified that on September 6, 1998, she was a neighbor of the defendant on Loretta Drive in Walland, Tennessee and that she heard a "disturbance," which she termed "fussing and fighting" coming from the defendant's trailer. Later that day, she observed police cars arriving at the defendant's residence. After she saw police officers conversing with the defendant, she saw the officers attempting to carry the defendant to a cruiser. The defendant appeared "lethargic" and would not cooperate or stand on his feet. While the officers were attempting to carry the defendant to the cruiser, Ms. Barca overheard the defendant "cussing" the police officers and observed him behaving in an "uncooperative fashion."

Kim Ochoa, Ms. Barca's daughter, testified that she lived one trailer farther from the defendant than did her mother and that on September 6, 1998, she heard a "great deal of screaming and cursing which was annoying" to her but did not cause her to call the police or to go outside and investigate. After she saw police cars passing her residence, she went to Ms. Barca's residence and observed police officers carrying the defendant out of his trailer. The defendant yelled "intermittently" but was "not struggling with the officers." She observed that the officers had difficulty getting the defendant into the cruiser "because he appeared to be intoxicated"; however, the defendant "was not fighting with the officers."

Officer Randall Ailey of the Blount County Sheriff's Department testified that on September 6, 1998, he answered a domestic violence call at the defendant's residence on Loretta Drive. Upon arrival, he encountered the defendant's wife and stepson outside the mobile home. While the officer conversed with them, the defendant "stepped outside the residence and began to yell and curse." The defendant complied with the officer's request that he go back inside the residence. However, the defendant later came to the door and "began to call everybody names" while he held the door open. Officer Ailey walked to the door and stepped inside the mobile home. Officer Ailey testified that "the defendant swung at him with his left fist [,] . . . missed [,] . . . and fell into the wall of the trailer." As the defendant tried to regain his feet, the officer used a leg sweep to put the defendant down on the floor. Officer Ailey called for assistance and informed the defendant that he was under arrest. The defendant then "attempted to jerk away and told his daughter to go into the bedroom and get his gun." Officer Ailey testified that he had to use chemical spray to subdue the defendant. The defendant "locked his arms underneath him in an attempt to keep Officer Ailey from placing handcuffs on him"; however, the officer succeeded in handcuffing the defendant and placing him into the police cruiser.

Ron Blair, a reserve officer with the Blount County Sheriff's Office, assisted Officer Ailey in answering the call at the defendant's residence on September 6, 1998. In his testimony, Officer Blair essentially confirmed Officer Ailey's testimony about the defendant's conduct during the officers' interview of the defendant's wife and stepson. Officer Blair saw Officer Ailey enter the residence and saw the defendant attempt to hit Ailey with his left hand. Officer Blair entered the residence and saw Officer Ailey restraining the defendant on the floor and heard the defendant instruct his daughter, who appeared to be "very distraught," to go to "the bedroom and get [the

-2-

defendant's] gun." The defendant's daughter struggled with Officer Blair as he attempted to restrain her. Officer Blair testified that the officers had to pull the uncooperative defendant to the cruiser as he "continued to swear."

Linda Adams, the defendant's wife, testified in his behalf that on September 6, 1998, the defendant and her son, Robert Adams, argued about a puppy. The defendant, who had been drinking "throughout the day, but was not . . . intoxicated," struck Robert Adams. Linda Adams called the police. She and Robert met the officers when they arrived. The defendant came out of the residence twice, and after the second time, Officer Ailey went to the house to apprehend the defendant. Mrs. Adams testified that she told Officer Ailey that the defendant was disabled. She next saw the defendant as he was being dragged and carried by his arms and shoulders to the police car. She noticed that his face was "bruised and scratched." She denied that the defendant was swearing or fighting.

The defendant testified that, although he had been drinking on September 6, 1998, he was not intoxicated when he struck Robert Adams. The defendant was angry because Robert's puppy had continued to void waste in the residence. When he saw the police arrive, he went outside to tell Linda and Robert Adams to vacate the premises. He admitted that he was "agitated by the presence of the police" but denied causing any disturbance and denied coming outside a second time. The defendant testified that Officer Ailey came inside the residence and "threw him into the wall while ripping the telephone . . . out of his hand." He testified that Officer Ailey hit him in the face and knocked him to the floor and that as he attempted to defend himself, the officer sprayed him with chemical spray. The defendant denied instructing his daughter to obtain a gun from the bedroom. The defendant testified that his difficulty in complying with the officer's attempts to take him to the cruiser were the result of his "excruciating pain from the treatment he received from Officer Ailey." He testified that this "treatment, coupled with an existing injury, caused him to be immobile at this point." He denied struggling or cursing the officers.

Upon this evidence, the trial judge convicted the defendant of both offenses and proceeded to sentence the defendant without ordering a presentence report or holding a sentencing hearing.

We have considered the state's argument that the "statement of the evidence," filed in this case in lieu of a verbatim transcript of the evidence, was inadequate. The state argues that the statement was not "certified by [counsel] as an accurate account of the proceedings." See Tenn. R. App. P. 24(c). We are unpersuaded that the statement falls short of complying with Rule 24(c). The record contains a separately bound document captioned "Statement of the Evidence," which was filed in the trial court on May 3, 2000. It reflects that the case was bench tried on February 3, 2000. The "statement" initially summarizes the procedure used by the trial court, identifies counsel, states the number of witnesses called by each party, and elucidates the trial court's conviction and sentencing rulings. Then the "statement" describes the testimony of each witness in *seriatim*. Counsel for both the state and the defendant signed the document. The document contains no express certification that it is an accurate account of the proceedings below. However, the

description of the evidence presented is obviously detailed and replete with specific information, and it is implicitly and jointly presented as a full and accurate record of the proceedings below. The state, as the appellee, filed no objections to the statement with the trial court clerk, as is contemplated by Rule 24(c) when an appellee objects to or differs with the statement. Id. Moreover, the state, on appeal, does not argue that the statement is inaccurate or incomplete. In view of all of the circumstances, we treat the "statement of the evidence" as part of the record on appeal.

## I. Sufficiency of the Evidence.

It is well established that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978); State v. Townsend, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, State v. Grace, 493 S.W. 2d 474, 476 (Tenn. 1973); Anglin v. State, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977), which the defendant has the burden of overcoming. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, when the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn R. App. P. 13; see also State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). This rule applies to findings based on both direct and circumstantial evidence. State v. Thomas, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988). Circumstantial evidence alone may be sufficient to convict one of a crime. State v. Boling, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992).

As it pertains to disorderly conduct as alleged in the indictment, Tennessee law provides that a "person commits an offense who, in a public place and with the intent to cause public annoyance or harm[,] . . . makes unreasonable noise which prevents others from carrying on lawful activities." Tenn. Code Ann. § 39-17-305(a), (b) (1997).

As it pertains to resisting arrest as alleged in the indictment, Tennessee law provides that a person commits an offense who "intentionally . . . obstruct[s] anyone known to the person to be a law enforcement officer . . . from effecting a[n] . . . arrest . . . of any person, including the defendant, by using force against the law enforcement officer." Tenn. Code Ann. §39-16-602(a) (1997). Generally, it is no defense to a prosecution of resisting arrest that the arrest was unlawful. Tenn. Code Ann. § 39-16-602(b) (1997).

Regarding the disorderly conduct conviction, we agree with the defendant that the convicting evidence is insufficient. In the indictment, the state specified that the theory of this prosecution was that the defendant, intending to cause public annoyance or alarm, made unreasonable noise preventing others from carrying on lawful activities. See Tenn. Code Ann. § 39-17-305(b) (1997). On appeal, the state theorizes that the offensive conduct consisted of the "fussing and fighting" which emanated from the defendant's trailer prior to the arrival of law enforcement officers. However, the two witnesses to this "fussing and fighting," Ms. Barca and Ms. Ochoa, testified only that they heard the noise coming from the defendant's residence. They failed to testify that they heard *the defendant* fussing, fighting or creating any other noise. Additionally, we can glean from the record no evidence that, if the defendant made unreasonable noise, that he did so "with intent to cause public annoyance or harm." See Tenn. Code Ann. § 39-17-305(a) (1997). Finally, although Ms. Ochoa testified that she was annoyed by the commotion at the defendant's trailer, neither she nor Ms. Barca testified that the noise prevented her from conducting lawful activities. We conclude, therefore, that the state failed to prove the offense of disorderly conduct *as it had alleged the offense in the indictment*, and the conviction for that offense must be reversed. That charge is dismissed.

Regarding resisting arrest, we conclude that the evidence supports the conviction. In the light most favorable to the state, the evidence shows that the defendant intentionally obstructed a law enforcement officer from effecting an arrest. The record supports the defendant's conviction of that offense.

## II. Sentencing.

Tennessee Code Annotated section 40-35-302 provides in part that the trial court shall impose a specific misdemeanor sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. Tenn. Code Ann. § 40-35-302(b) (1997). In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a) (1997). Misdemeanor sentencing is designed to provide the trial court with a great deal of flexibility. One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). This court has also held that the statutory presumption of favorable candidacy for alternative sentencing does not apply to a defendant who has been convicted of a misdemeanor. State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). But see State v. Combs, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996); State v. Boyd, 925 S.W.2d 237, 245 (Tenn. Crim. App. 1995); State v. Gennoe, 851 S.W.2d 833, 837 (Tenn. Crim. App. 1992). Our law does not require that a trial judge make specific findings of fact in misdemeanor sentencing when determining what portion of a defendant's sentence the defendant will serve in confinement. State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). The trial court is empowered to place the misdemeanant on probation immediately or after a period of confinement. Tenn. Code Ann. § 40-35-302(e) (1997). The burden for showing that the court should probate the sentence rests with the defendant. Tenn. Code Ann. § 40-35-303(b) (1997).

The "statement of evidence" reflects no findings that led the trial court to impose ten days of incarceration, but as pointed out above, the trial court was not obliged to make such findings on the record. See Troutman, 979 S.W.2d at 274. We must defer to this presumptively correct determination by the trial court. See Tenn. Code Ann. § 40-35-401(d) (1997); State v. Ashby, 823 S.W.2d 166, 171 (Tenn. 1991). The defendant has failed to show why a short term of confinement was improper in this case.

Accordingly, we affirm the conviction of resisting arrest and the manner of service of the sentence. We reverse the conviction of disorderly conduct and dismiss that charge.

_____
JAMES CURWOOD WITT, JR., JUDGE