IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 22, 2002

## STATE OF TENNESSEE v. JACQUIE UPCHURCH GIARDINA

**Appeal from the Criminal Court for Hawkins County**
**No. 7809      James E. Beckner, Judge**

**No. E2001-00581-CCA-R3-CD**
**May 2, 2002**

Convicted by a jury of third-offense driving while under the influence (DUI), the defendant, Jacquie Upchurch Giardina, challenges on appeal the sufficiency of the convicting evidence and her sentence of eleven months and 29 days to be served in confinement. Discerning no error, we affirm the conviction and the sentence.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

R. Russell Mattocks, Assistant Public Defender, Morristown, Tennessee, for the Appellee, Jacquie Upchurch Giardina.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Jack Marecic, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

In the light most favorable to the state, the evidence showed that on October 12, 2000, Reverend Teddy Webb drove a Ford Ranger pick-up truck he had borrowed from a friend into the parking lot at the Amoco Quick-Stop in Church Hill. He parked, walked away from the truck, and stood outside the store building talking with Jim Tilson, the owner and operator of the Amoco Quick-Stop. Tilson noticed that a gray Ford LTD bumped into the back of the Ranger. Then, Tilson saw the LTD, with the defendant in the driver's seat, move in reverse a few feet away from the Ranger and stop. Mr. Tilson testified that the backward movement of the car was "upgrade." Mr. Tilson and Mr. Webb went over to investigate and discovered damage to the rear bumper and fender of the Ranger and a broken headlight on the LTD.

The defendant approached Mr. Webb and asked him to "forgive" her. He responded that the would forgive her, but he would still have to have the truck fixed.

Mr. Tilson testified that the defendant's speech was "kind of slurry" and that "she seemed to be disoriented." Mr. Webb testified that the defendant was "mumbling and she couldn't stay focused and she couldn't hardly walk."

A police officer, who was helping a motorist unlock his car parked at the Amoco Quick-Stop, heard a "bang" noise and the sound of breaking glass. He turned within a "second" to see "two vehicles together," a Ford pick-up and a Ford LTD. He saw the defendant alone in the LTD and seated in the driver's seat. The LTD then moved backward a few feet away from the truck

The officer went over and spoke to the defendant, whose speech was slurred to the point that "you could hardly understand a word she was saying." Upon extracting the defendant from the LTD, she staggered and was unsteady on her feet. She had to hold onto the car for support, and the officer determined she was too intoxicated to perform field sobriety tests. The officer opined that the defendant was too impaired to safely operate a motor vehicle.

The officer testified that during his investigation of the incident and arrest of the defendant, the keys to the LTD were in its ignition switch. Hayden Young, the defendant's uncle, had been standing near the station's air compressor and walked up to the two vehicles after the collision occurred. The officer testified that Mr. Young told him that Mr. Young had gone inside the store to get the air hose and "didn't know [the defendant] was going to drive [his] car around there."

The defendant testified that on the morning of October 12, 2000, in preparation for a uterine biopsy to be performed that day, she consumed no food or alcoholic beverages but took two "Lortabs" which were prescribed for the biopsy procedure. Her uncle, Hayden Young, was driving her to her doctor's office in his LTD and stopped at the Amoco Quick-Stop to buy gas and put compressed air into an air tank he carried in his car trunk. The defendant testified that Mr. Young parked the car behind the Ford Ranger, took the keys from the switch to open the trunk, removed the tank, pocketed the keys, and went to the station's compressed air dispenser. The defendant testified that she got out of the car with a tire gauge to check the pressure in the tires. As she was preparing to remove the valve-stem cap from a rear tire she felt an impact when the LTD rolled into the back of the Ranger. She testified that she then got into the LTD to set the automatic transmission gear selector in "park." She further testified that, although she was impaired from the prescription medication, she had not been drinking. She denied driving the LTD at any time on October 12, 2000.

Mr. Young testified that he removed the keys from the switch and kept them in his pocket until after the defendant was arrested and removed from the scene. He further testified that there was only one set of keys to the LTD and that the car could not be started without them.

After the jury convicted the defendant, the trial court conducted a sentencing hearing. Based upon the presentence investigative report, the judge determined that the defendant's prior conviction record consisted of convictions for public intoxication in 1996 and 1999 and convictions for DUI in 1992, 1998, and 2001. The 2001 DUI occurred on March 6, 2000 in Sullivan County, and the defendant was on bond for this latter offense when she committed the current offense on October 12, 2000. Based on the March 6 offense, she was convicted in Sullivan County of third-offense DUI a few days before her conviction in the present case. The trial judge sentenced the defendant to serve eleven months and 29 days in confinement consecutively to the Sullivan County sentence. In her appeal to this court, the defendant challenges the sufficiency of the convicting evidence and the propriety of her sentence.

We address the sufficiency-of-the-evidence issue first. It is well established that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *State v. Townsend*, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal. *State v. Grace*, 493 S.W. 2d 474, 476 (Tenn. 1973); *Anglin v. State*, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977). The defendant has the burden of overcoming this presumption. *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, when the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 2782 (1979); Tenn R. App. P. 13; *see also State v. Williams*, 657 S.W.2d 405 (Tenn. 1983). This rule applies to findings based on both direct and circumstantial evidence. *State v. Thomas*, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988). Circumstantial evidence alone may be sufficient to convict one of a crime. *State v. Boling*, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992).

The defendant argues in her brief that no witness testified that the defendant was driving the LTD when it hit the Ford Ranger. We point out, however, that Mr. Tilson saw her in the driver's seat immediately following the collision and while the car was backing uphill. The police officer turned within a second of hearing the collision sounds to see the defendant behind the wheel of the LTD as it backed up. The state introduced testimony that the defendant asked to be "forgiven" for the mishap. The evidence circumstantially established, by excluding every other reasonable hypothesis, that the defendant drove the LTD on October 12, 2000. Moreover, the defendant's version of the collision was incredible, and the police officer directly contradicted Mr. Young's testimony that the car keys were not in the ignition. It was the jury's prerogative and duty to determine the credibility of witnesses. The verdict signifies that the jury accredited the testimony

of the state's witnesses over that offered by the defendant. Because the evidence in the light most favorable to the state supports the jury's verdict, we affirm the conviction.

We now turn to the defendant's complaint about her eleven-month, 29-day incarcerative sentence. The defendant argues in her brief that the sentence was "excessive" and that the trial court placed too much emphasis on her prior record, which included three DUI and two public intoxication convictions but no felonies. She also complains that the trial court erred in failing to apply in mitigation that the defendant neither caused nor threatened serious bodily injury and that the crime was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the conduct. *See* Tenn. Code Ann. § 40-35-113(1), (11) (1997). Also, she argues that the trial court improperly relied upon deterrence in denying probation.

We are unpersuaded that the trial court exceeded the "wide latitude of flexibility" that our law affords trial courts in misdemeanor sentencing. *See State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). At the threshold of our review of a misdemeanor sentence, the defendant appears with three disadvantages. First, our *de novo* review in this case is accompanied by the presumption that the trial court's sentence is correct. *State v. Lauren E. Leslie and Janie Whitehead*, No. 03C01-9804-CR-00125, slip op. at 4 (Tenn. Crim. App., Knoxville, Mar. 23, 1999). Second, the statutory presumption of favorable candidacy for alternative sentencing set forth in Tennessee Code Annotated section 40-35-102(6) does not apply in misdemeanors. *State v. Bruce Adams*, No. E2000-00298-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Knoxville, Dec. 8, 2000), *perm. app. denied* (Tenn. 2001).[1] Third, the misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. *Creasy*, 885 S.W.2d at 832.

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a) (1997). Misdemeanor sentences must be specific and in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of 1989. *Id.* §§ 40-35-104, -302 (1997) (Supp. 2001); *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). The length of all third or subsequent DUI sentences, however, is by statute

---

[1] As pointed out in *Bruce Adams*, this court has previously split on the issue of whether the section 40-35-102(6) presumption of favorable candidacy for alternative sentencing applies in misdemeanors. In *State v. Williams*, 914 S.W.2d 940 (Tenn. Crim. App. 1995), this court held that the "presumption does not apply to an accused convicted of a misdemeanor." *Williams*, 914 S.W.2d at 949. Subsequently, the court said that the "presumption would logically apply to misdemeanors." *State v. Boyd*, 925 S.W.2d 237, 245 (Tenn. Crim. App. 1995); *see also State v. Combs*, 945 S.W.2d 440, 774 (Tenn. Crim. App. 1996). We believe the matter was laid to rest by our supreme court in *State v. Troutman*, 979 S.W.2d 271 (Tenn. 1998). Even though the *Troutman* court commented that Code section 40-35-102 contains considerations for determining the manner of service for both misdemeanor and felony sentences, the comment immediately followed the high court's citing *Williams* for the proposition that the presumption of section 40-35-102(6) does not apply in misdemeanors. *Troutman*, 979 S.W.2d at 273. Certainly, even though the sentencing *considerations* contained in section 40-35-102 apply in misdemeanors, the presumption of favorable candidacy for alternative sentencing need not, and we take our cue from *Troutman* that, indeed, the presumption does not apply.

established at eleven months and 29 days. Tenn. Code Ann. § 55-10-403(c) (1998); *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998).

The authorized determinant sentence must be coupled with a percentage of that sentence designated for eligibility for rehabilitative programs. Tenn. Code Ann. § 40-35-302(d) (Supp. 2001). In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to the sentencing. *Palmer*, 902 S.W.2d at 393-94.

For misdemeanor sentencing, the trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e) (Supp. 2001). In determining whether to grant probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record and potential for rehabilitation, the defendant's background and social history, present condition, including physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. *See, e.g., State v. Hayes*, 29 S.W.3d 1 (Tenn. 2000); *Stiller v. State*, 526 S.W.2d 617, 620 (Tenn. 1974). The sentencing law provides that the trial court has a wide latitude of flexibility in misdemeanor sentencing. Tenn. Code Ann. § 40-35-302(3) (Supp. 2001).

In the present case, the length of sentence was mandated by law. S*ee Troutman*, 979 S.W.2d at 273. The trial court granted no probation and established the portion of the sentence that the defendant must serve before becoming eligible for release at 100 percent. *See* Tenn. Code Ann. § 40-35-302(d) (Supp. 2001); *Palmer*, 902 S.W.2d at 393-94 (court may require 100 percent of service in DUI cases). In so doing, the trial court acknowledged and referred to the sentencing principles and guidelines.

The trial court based its denial of probation and of a lower service percentage in part upon the application of two "strong" enhancement factors — factor (1) that the defendant has a history of criminal convictions, and factor (8), that she has a previous history of unwillingness to comply with conditions of a non-incarcerative sentence. *See* Tenn. Code Ann. § 40-35-114(1), (8) (1997); *Palmer*, 902 S.W.2d at 393-94 (in determining the percentage of service, court considers the enhancement and mitigating factors as well as the legislative purposes and principles of sentencing). The trial court applied no mitigating factors. Also, the court relied upon the statutory bases for sentences involving confinement. *See id.* § 40-35-103(1) (1997). It found a need to provide an effective deterrence to others likely to commit similar offenses, *see id.* § 40-35-103(1)(B), and it also concluded that there is "little or no chance of rehabilitating the defendant at this point." *See, e.g., id.* § 40-35-103(5) (1997). Based upon the current offense being committed while the defendant was on bond for the Sullivan County DUI, the court imposed the current sentence to run consecutively to the Sullivan County DUI sentence.

We conclude that the trial court's sentence is well supported by the record. First we note that the trial court is afforded "considerable latitude in determining whether a need for

deterrence exists and whether incarceration appropriately addresses that need." *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). In fact,

> [W]e will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

*Id.* In *Hooper*, our supreme court said that, in determining a need for deterrence and whether incarceration is particularly suited to deterrence, a trial court should consider factors such as whether (1) other incidents of the crime are increasing in the community, jurisdiction or state; (2) the defendant's crime was intentional, knowing or reckless; (3) the defendant's crime and conviction received unusual publicity; (4) the defendant acted as a member of a criminal enterprise; and (5) the defendant has previously engaged in similar criminal conduct. *Id.* at 10-12.

In the present case, the trial judge placed in the record his finding that driving while intoxicated is an increasing problem in the jurisdiction, a fact that is illustrated by increasing DUI court dockets, and that requiring incarceration for the defendant, a third-time offender, is an apt means of deterrence. We also note, as did the trial judge, that the defendant has previously engaged in similar criminal conduct. We hold that the record before us supports the trial court's reliance upon deterrence to impose a sentence of confinement.

Next, we focus upon the trial court's legitimate concern that the defendant is practically incapable of rehabilitation. This finding, supported by the record of her DUI recidivism, serves as a basis for denying probation. Also, a defendant's lack of candor speaks to her amenability to rehabilitation. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). The trial court found that the defendant blatantly testified falsely. This finding further suggests the improbability of rehabilitation, thereby supporting the denial of probation.

The defendant also complains that the trial court did not consider in mitigation that the defendant's conduct did not cause or threaten serious bodily injury and that the crime occurred under circumstances that indicate improbability of reoccurrence. Even though mitigating factors, along with enhancement factors, are aptly considered when determining the percentage of service of a misdemeanor sentence, we find the defendant's argument unavailing. The record does not show that the crime was committed in circumstances that indicate an improbability of reoccurrence. Regarding the lack or threat of serious bodily injury, we conclude that, even had the trial court considered this factor in mitigation, it would have been of insufficient weight to offset the more weighty enhancement factors. In short, we discern no reversible error in the trial court's rejection of mitigating factors.

Accordingly, we conclude that the record supports the trial court's sentence.

The judgment below is affirmed.

_____

JAMES CURWOOD WITT, JR., JUDGE