# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 15, 2002

## STATE OF TENNESSEE v. ERICK DARNELL BAILEY

**Appeal from the Criminal Court for Davidson County**
**No. 99-B-1017      Seth Norman, Judge**

---

**No. M2001-01974-CCA-MR3-CD - Filed June 19, 2002**

---

The defendant, Erick Darnell Bailey,  appeals his first-degree murder convictions imposed following a jury trial in the Davidson County Criminal Court.  The defendant was tried and convicted on both felony-murder and premeditated-murder counts in the indictment, and the trial court merged the convictions into a single conviction of first-degree murder.  The single issue raised on appeal is whether the convicting evidence is sufficient to support the verdicts.  We modify the conviction for premeditated murder to second-degree murder and affirm the conviction for first-degree, felony murder.  The second-degree murder conviction merges into the felony murder conviction.

**1.Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed as Modified.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Ralph Newman and Elizabeth Ezell, Nashville, Tennessee (at trial) and C. Dawn Deaner, Nashville, Tennessee (on appeal) for the Appellant, Erick Darnell Bailey.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The defendant was charged in a two-count indictment with killing Timothy Chandler on December 27, 1998 at a Nashville convenience store. The first count alleged that the defendant killed the victim while perpetrating a robbery, *see* Tenn. Code Ann. § 39-13-202(a)(2) (Supp. 2001), and the second count alleged that the defendant premeditatedly and intentionally killed the victim, *see id.* § 39-13-202(a)(1) (Supp. 2001).  After a three-day trial, the jury convicted the defendant on both counts.  The trial court merged the premeditated-murder conviction in count two with the felony-murder conviction in count one and imposed a life sentence.

In the light most favorable to the state, the evidence introduced at trial showed that the victim left his home on the evening of December 27, 1998 to rent video movies and to buy food for an evening meal for himself, his two children, his girlfriend, and other family members. The victim was driving his girlfriend's gold-colored Camaro that was accessorized with a set of chrome wire wheels valued at approximately $4,000. After renting the videos and buying the food, he stopped at an Aztec convenience store on Dickerson Road and at 7:48 p.m. prepaid for ten dollars' worth of gas with ten one-dollar bills. He left the store through the rear door in the direction of the gas pumps that were located on the back side of the store.

At or about this time, the defendant was riding on Dickerson Road with his twin brother Derrick Bailey and two cousins, Alvin Hall and Javon Garrison, in Derrick Bailey's Cadillac. According to Mr. Hall's testimony, Derrick Bailey was driving and the defendant was riding in the front passenger seat. Due to the volume of the radio, Hall could not hear the conversation between the two Baileys in the front seat. After they passed the Aztec, Derrick Bailey turned the Cadillac around and drove back toward the Aztec. He pulled the car into the Taco Bell parking lot adjacent to the Aztec and parked behind the Taco Bell. The defendant got out of the car and went through the shrubbery into the rear portion of the Aztec lot.

Derrick Bailey then drove the Cadillac back to the street and pulled up to the front of the Aztec store. Hall got out and went inside the store to buy a drink. Hall and the store clerk both testified that the defendant was in the store when Hall came in. The defendant asked Hall if he had change for $20 and, after receiving a negative response, exited the store through the rear door. According to the clerk, the defendant exited the store some time after the victim had exited through the same door. The clerk did not specify the amount of time that elapsed between the victim's exit and the defendant's exit through the same door. She testified that the next gas sale occurred "[a]t the most[] 20 minutes" after the victim's purchase.

Mary Ann Fenter, an Aztec customer, testified that when she drove to the rear of the Aztec only one car was present, a "champagne-colored" car parked beside a gas pump. Nearby were two men, one who was lying on the ground and the other, a black man, who was standing over and looking down at the prone man. The man who stood was holding onto the jacket of the prone man, who did not move. When the man who was standing saw Ms. Fenter looking at him, he turned loose of the other man's jacket, got into the champagne-colored car, and drove away in a manner that she "wouldn't call speeding, but . . . wouldn't call it slow."

Alvin Hall had exited the Aztec store through the front door and had rejoined Garrison and Derrick Bailey in Bailey's Cadillac. Bailey then drove the Cadillac around to the rear of the Aztec where Hall saw the Camaro with its headlights off, moving away from the gas pump. The Cadillac followed the Camaro onto and down Dickerson Road. Both vehicles turned onto Bellshire Road. Hall asked to be let out, and Derrick Bailey stopped the Cadillac and let Hall and Garrison out.

Meanwhile, Ms. Fenter had alerted the store clerk, who called the police. Although neither Ms. Fenter nor the clerk had heard a gunshot, the victim had been shot by a .9 mm weapon that was fired within six inches of the victim's chest. The bullet struck the heart, liver, aorta, and spine. The victim died while on a hospital operating table.

Later that evening, a motorist discovered the Camaro on Jackson Road about two miles from Dickerson Road and five miles from the Aztec. Jackson Road is connected to Dickerson Road via Brick Church Road and Bellshire. The wheels and tires, radio, and speakers had been removed from the Camaro, and someone had ineffectually attempted to set the car afire.

The police were alerted to the defendant's involvement in the crime by the store clerk's identification of him and his appearance on the store's surveillance videotape. After the police apprehended the defendant, they discovered $950 on his person, including 166 one-dollar bills. The defendant admitted being at the Aztec during the evening of December 27 and said that he had "heard a shot."

The police obtained Derrick Bailey's Cadillac. They found evidence that someone had placed tires in the backseat. They photographed a portion of the back of the leather front seat, where an impression of raised lettering from a tire had been left. This lettering was identified as belonging to a specific make and model of tire that had been sold to the victim and mounted on the Camaro in the summer of 1998. Also, after recovering the Camaro, the police discovered a propane bottle in its trunk that bore the defendant's fingerprint.

The defendant was convicted at trial of both felony murder and premeditated murder. On appeal, the sole issue is whether the convicting evidence is sufficient. In presenting that issue, the defendant concedes that the evidence supports a finding that he robbed the victim or stole his car; however, the defendant posits that the evidence fails to establish that he was the person who shot the victim. Essentially, he argues that the evidence does not exclude the reasonable hypothesis that the defendant came along to rifle the victim's pockets and steal his car after someone else had shot the victim.

It is well established that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *State v. Townsend*, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973); *Anglin v. State*, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977), which the defendant has the burden of overcoming, *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, where the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13*; Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 2782 (1979); *see also*, *State v. Williams*, 657 S.W.2d 405 (Tenn. 1983). This rule applies to findings based on both direct and circumstantial evidence. *State v. Thomas*, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988).

The defendant's appellate challenge to the sufficiency of the convicting evidence calls into play the rules concerning the use of circumstantial evidence. Unquestionably, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); *State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); *State v. Lequire*, 634 S.W.2d 608 (Tenn. Crim. App. 1982). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971); *Jones*, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Crawford*, 225 Tenn. at 484, 470 S.W.2d at 613.

First-degree murder is committed by one who kills another premeditatedly and intentionally, Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 2001), or who kills another "in the perpetration of or attempt to perpetrate any . . . robbery," *id.* § 39-13-202(a)(2) (Supp. 2001). Premeditation involves "an act done after the exercise of reflection and judgment [and] means that the intent to kill must have been formed prior to the act itself[, although] it is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time." *Id.* § 39-13-202(d) (Supp. 2001). "No culpable mental state is required for conviction [of felony murder] except the intent to commit the enumerated offense[]," which in the present case is robbery. *Id.* § 39-13-202(b) (Supp. 2001).

Looking first to the felony-murder conviction, we find sufficient evidence, albeit circumstantial, of a killing committed during the perpetration of a robbery. In so doing, we reject the defendant's claim that the circumstantial evidence fails to exclude every reasonable hypotheses except that the defendant was the person who shot the victim.

The evidence showed, rather palpably we think, that in driving past the Aztec, the Bailey brothers were attracted to something they saw, causing them to turn around and resulting in the defendant stealthily entering the rear of the Aztec property. The jury could easily infer that he loitered about the Aztec store while the victim pumped gas into the Camaro. Then, he left the store – not through the front door, in the direction of his brother's Cadillac – but through the rear door toward the rear gas pumps, where the only vehicle known to be present was the Camaro. A short time later, the defendant was seen standing over the prone victim with his hands on the victim's coat. He then drove away in the victim's car, leaving the victim mortally wounded by a gunshot to the

chest. The defendant's brother followed in the Cadillac, and soon thereafter, the defendant abandoned the Camaro after removing the radio, speakers, and expensive wheels.

These events bespeak the brothers' plan to steal the Camaro in order to obtain the wheels, a plan that likely was hatched between the time that they passed the Aztec the first time and then turned around to go back. The defendant's actions in lurking about the Aztec store and then exiting through the rear door are consistent with this plan. Significantly, until Ms. Fenter arrived, there was no evidence of any other persons being near the rear gas pumps except the victim and the defendant.

Accordingly, we find unreasonable the hypothesis that someone else killed the victim and that the defendant merely came along later to steal the Camaro. We hold that the evidence of felony murder excluded every other reasonable hypothesis except the guilt of the defendant beyond a reasonable doubt.

Now, we address the issue of the conviction of premeditated murder. Of course, our determination that the circumstantial evidence supports the conclusion that the defendant committed felony murder also supports the general conclusion that the defendant was the man who shot the victim. That conclusion alone, however, does not establish all of the elements of premeditated murder.

As noted above, premeditation involves the doing of an act after the exercise of reflection and judgment. Tenn. Code Ann. § 39-13-202(d) (Supp. 2001). "Premeditation involves a previously formed design, or actual *intention to kill*." *State v. Brown*, 836 S.W.2d 530, 539 (Tenn. 1992) (quoting *Lewis v. State*, 40 Tenn. 127, 147-48 (1859)) (emphasis added in *Brown*). It is the process "'of thinking about a proposed killing before engaging in the homicidal conduct.'" *Id.* at 541. "[N]o specific period of time need elapse between the defendant's formulation of the design to kill and the execution of that plan . . . ." *Id.* at 543.

Our legislature has mandated that "[t]he mental state of the accused at the time the accused allegedly decided to kill *must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation*." Tenn. Code Ann. § 39-13-202(d) (Supp. 2001) *(*emphasis added*)*. However, premeditation may be inferred from the circumstances surrounding the killing. *Brown,* 836 S.W.2d at 541; *State v. Gentry*, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). Facts which may allow a jury to infer premeditation include:

> (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is planning activity;

> (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred; and

(3) facts about the nature of the killing from which it may be inferred that the manner of the killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

*State v. Bordis*, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Moreover, Tennessee courts have specified relevant circumstances and considerations:

the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, and calmness immediately after the killing.

*State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997).

In the present case, the evidence shows that the defendant planned to rob the victim of the Camaro, but the record is devoid of proof that the defendant planned to kill the victim. Although the evidence showed that the defendant knew that the victim possessed the Camaro with the expensive wheels, thus establishing a motive for robbery, there was no proof of any prior relationship between the victim and the defendant that supplies a motive for murder. Although a gun was used upon an unarmed victim, there is no evidence that the defendant procured the gun in order to shoot the victim. Significantly, except for the fact that the gun was close to the victim when it was fired into his chest, there is no evidence about the nature or circumstances of the actual killing. There is no declaration of an intent to kill the victim and no indication whether there was an argument or struggle that might have prompted a passionate or an accidental shooting. In truth, we know nothing about the defendant's critical confrontation with the victim.

When, as here, "there simply is no evidence in the record that in causing [the victim's] death, [the defendant] acted with the premeditation . . . required to establish first-degree murder," *see Brown*, 836 S.W.2d at 543, we must reverse the conviction for that offense, *id.* at 544. Of course, one could speculate that the defendant formed a prior intent to shoot the victim in order to facilitate the theft of the car, but a jury may not engage in "pure speculation" and may not "construct a theory based on no evidence at all." *State v. West*, 844 S.W.2d 144, 148 (Tenn. 1992). "[I]n the absence of proof of . . . premeditation, an unlawful killing is presumed to be second degree murder." *Id.*

Given the presumption in favor of second-degree murder and finding ample evidence to support a finding that the defendant knowingly killed the victim, we reverse and vacate the first-degree murder conviction on count two and impose in lieu thereof a conviction of second-degree murder. *Accord State v. Boyd*, 909 S.W.2d 50, 55 (Tenn. Crim. App. 1995) (where stated failed to offer any evidence of deliberate and premeditated nature of attempted homicide, presumption applied that attempted unlawful killing was attempted second-degree murder); *State v. Darnell*, 905 S.W.2d

953, 961-62 (Tenn. Crim. App. 1995) (premeditated murder conviction modified to second-degree murder where state's arguments, although strong and possibly correct, were not supported by quantum of proof necessary to sustain premeditated first-degree murder conviction). Of course, this conviction in count two remains merged with the first-degree felony-murder conviction in count one.

In all other respects, we affirm the actions of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE