**STATE of Tennessee, Petitioner,**

v.

**Roy TOWNSEND, Respondent.**

Supreme Court of Tennessee.

June 23, 1975.

William C. Koch, Jr., Asst. Atty. Gen., Nashville (R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel), for petitioner.

John H. Dinwiddie, Cleveland, for respondent.

## OPINION

HARBISON, Justice.

Respondent was convicted of murder in the second degree and sentenced to serve from ten to twenty years in the state penitentiary in connection with the death of Barbara Alexander on Sunday, January 7, 1973. Respondent was also found by the jury to be an habitual criminal and was sentenced to life imprisonment pursuant to the provisions of T.C.A. § 40–2801.

Upon appeal of these convictions by the respondent, the Court of Criminal Appeals reversed the conviction for homicide and remanded the case for a new trial. That Court also held that the previous convictions of the respondent did not meet the criteria set out in T.C.A. § 40–2801 and did not sustain the charges of habitual criminality. The second count of the indictment was, therefore, dismissed as a matter of law.

This Court granted certiorari and has heard oral argument in the case. We will deal separately with the questions of the sufficiency of the evidence and the habitual criminal charges.

### A. Sufficiency of the Evidence

■ The rules under which the appellate courts of this state review criminal cases have been stated so frequently and are so well settled as not to require exten-sive citation. As stated by the Court in the case of White v. State, 210 Tenn. 78, 356 S.W.2d 411 (1962):

"It is a well settled rule that this Court will not reverse a criminal case on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused.

"The verdict of the jury, approved by the Trial Judge, accredited the testimony of the witnesses for the State, and established their credibility. Such verdict also displaced the presumption of defendants' innocence, raised a presumption of their guilt, and put upon them here the burden of showing that the evidence preponderates against the verdict and in favor of their innocence." 210 Tenn. at 84–85, 356 S.W.2d at 414.

See also Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107 (1964); Anderson v. State, 207 Tenn. 486, 495, 341 S.W.2d 385 (1960); Cooper v. State, 123 Tenn. 37, 138 S.W. 826 (1909).

■ The case against the respondent rested almost entirely on circumstantial evidence and upon inferences, deductions and conclusions to be drawn from the testimony of the witnesses, including the respondent, who took the stand and whose credibility was directly in issue in the case. As has been stated by this Court on previous occasions, even in circumstantial evidence cases, the burden rests on the defendant on appeal to show that the evidence preponderates against his guilt and in favor of his innocence. Chadwick v. State, 189 Tenn. 256, 225 S.W.2d 52 (1949); Ford v. State, 184 Tenn. 443, 201 S.W.2d 539 (1947).

It was the theory of the State that the respondent, while on a drunken overnight spree in the company of the deceased, Barbara Alexander, beat her so severely that she died from her injuries. On the other hand, respondent contended that the decedent received her injuries in an automobile accident which occurred as he was taking her home at about 8 o'clock on the morning of January 7, 1973.

It is undisputed in the record that the respondent did go to the residence of the decedent on Saturday afternoon, January 6, and that he was in her company continuously thereafter until the time of the accident. His uncle and his mother both saw the decedent during Saturday afternoon and early evening, and both of them testified that on the occasions when they saw her, there were no visible contusions or injuries about her face or body. The decedent and respondent consumed a large quantity of alcoholic beverages during Saturday afternoon and night, and spent the night in the automobile of the respondent, parked on a rural road. Respondent himself testified that both he and the decedent became intoxicated, and he said that he lost consciousness about 1:30 a. m. When he awoke at about 8 a. m., he said that the decedent was intoxicated. Both had disrobed and had sexual relations. Respondent attempted to assist the decedent in replacing her clothing. While he was driving the automobile in the general direction of the residence of the decedent, respondent failed to make a sharp curve in the road, and his automobile left the highway. A light snow was falling, and the road was slippery. Respondent's automobile went into a ditch and struck a culvert. Respondent contended that the injuries which the decedent was later found to have sustained were entirely the result of this automobile accident. He himself was found to have been uninjured in the automobile accident, except for some skinned places or bruises, and except for the fact that his left ring finger was broken after the accident. The respondent contended that this occurred in the accident, while the State contends that the injury to respondent's left hand was consistent with his having struck forcible blows to the decedent.

The decedent was found to have suffered a fractured cheekbone, and there were massive bruises and swelling around her eyes, cuts upon her forehead, and bruises in the chest area. A pathologist, testifying for the State, stated that the cause of death was due to a massive subdura hemorrhage (a hemorrhage under the lining of the brain). He also testified that the trauma to the jawbone or mandible was consistent with a blow by a fist and incompatible with an automobile accident. Both the pathologist and the doctor who attended the decedent in the hospital testified that the location and type of injuries sustained by the decedent did not seem to be those which would result from an automobile accident, and both of them testified that the injuries were consistent with those which would be sustained in a severe beating.

The automobile which respondent was driving was not seriously damaged in the accident, although one wheel and fender did receive some damage. The ditch into which the automobile slid was some three feet or more in depth, and the automobile struck a tile or culvert, breaking a portion of the tile on one end. Respondent telephoned for assistance from a nearby residence, and the owner of that residence also called a neighbor to investigate the accident. This neighbor noticed decedent partially clad on the floorboard of the passenger's side of the automobile, her head on the seat and her legs underneath the body. He saw some blood on her forehead, called for an ambulance and got a blanket to cover her. An ambulance attendant found decedent unconscious and having difficulty in breathing. He administered first aid, and detected the odor of alcohol both on her person and on the person of the respondent. Another ambulance attendant noted that the pupils of the eyes of decedent were dilated, indicating a head injury, and he also noted that the left cheekbone appeared to be fractured. He testified to severe bruising, swelling and discoloration around the eyes of the decedent. Both of these witnesses noted blood on the front seat of the automobile near the area where the head of decedent was resting. Other pieces of material from the interior of the automobile, including the back seat, were later found to have human blood stains, although an expert witness was unable to determine

whether or not the blood type was that of the decedent, because of the small amount of blood contained in the samples.

The decedent died later during the day of January 7, 1973 without regaining consciousness. Respondent consistently denied that he had injured the decedent in any way prior to the accident, and it was his insistence that all of her injuries were sustained when the automobile went into the ditch. He said that he was himself thrown about inside the automobile and that the decedent also struck portions of the interior. There was some evidence of an indentation in the dashboard of the automobile, but there was also evidence that this was not a fresh or new indentation.

In our opinion, from a careful and close review of this record, this was a classic case for determination by a jury. We have examined the authorities cited by the Court of Criminal Appeals, in which criminal agency was not found, or in which causation was found to be speculative, particularly the cases of *Fine v. State,* 193 Tenn. 422, 246 S.W.2d 70 (1952), and *Foster v. State,* 180 Tenn. 164, 172 S.W.2d 1003 (1943). In our opinion, the facts of these cases are not analogous to those of the present case. If the jury accepted the theory of the State, as they obviously did, there was no room left for doubt or speculation but that the respondent had administered a very severe and brutal beating to the decedent, so severely injuring her that she died from head injuries received therein. If they accepted the theory of the respondent, of course, then there was no criminal agency on anyone's part, and the injuries sustained by the decedent were the result of an automobile accident. We agree with the Court of Criminal Appeals that the evidence is insufficient to sustain an alternate theory, suggested by the State, that guilt of the respondent could be sustained on the ground that he operated an automobile while intoxicated and that the death was the natural and probable result of that illegal act. There is insufficient evidence of intoxication of the respondent at or about the time of the accident to sustain this alternate theory.

The respondent is shown to have had a criminal record involving sexual offenses. He had previously been convicted of rape, violation of the age of consent and three separate charges of assault with intent to commit a felony, growing out of charges of attempted rape. His credibility, manner and demeanor, together with the demeanor and appearance of all of the other witnesses, were available to the jury and are not available to an appellate court reviewing the transcript. The jury accredited the theory of the State, and their verdict was concurred in by the trial judge.

■ Under all of the circumstances, and after a careful examination of this record, we are unable to say that the evidence preponderates against the verdict of the jury, and accordingly we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court. Although the respondent did not assign error after the petition for certiorari of the State was granted, we have examined the record and concur with the Court of Criminal Appeals that there was no reversible error committed in the other trial procedures which were the subject of respondent's assignments of error in the Court of Criminal Appeals.

### B. *The Habitual Criminal Charge*

Respondent moved to quash the second count of the indictment, pertaining to the habitual criminal charge, and this motion, made prior to trial, was renewed at the trial. It was contended that the previous convictions of the respondent, the existence of which was not controverted, did not meet the specifications and requirements of T.C.A. § 40–2801. That section requires proof that the subject have three convictions of felonies, not less than two of which must be among those specified in the statute. None of the convictions of the respondent was specified by statutory citation under T.C.A. § 40–2801.

846

The section, however, also includes the offenses listed in T.C.A. § 40–2712, a statute calling for disfranchisement upon conviction of a number of named offenses, without citations to code sections. Apart from the offense of rape, respondent had not been convicted of any of the other offenses listed in T.C.A. § 40–2712, unless the offense of violation of the age of consent could be said to be within the purview of the offense of "abusing a female child" as listed in T.C.A. § 40–2712.

Listed in T.C.A. § 40–2801 as a specified offense is that of abduction of a female from her parents or guardian, T.C.A. § 39–3708. Also listed is the offense of assault with intent to carnally know or sexually molest a child under 12 years of age, T.C.A. § 39–606. The offense of violating the age of consent, however, as defined in T.C.A. § 39–3706, is not specifically listed in the habitual criminal statute, nor in the general statute pertaining to infamy and disfranchisement, T.C.A. § 40–2712.

The question is then presented as to whether the general phrase "abusing a female child" which is listed in the infamy statute, is identical to or includes the offense of violation of the age of consent. The penalty for violation of the age of consent, as specified in T.C.A. § 39–3706, is imprisonment for one to ten years. It is a distinct offense, separately codified and defined, from carnal knowledge and abuse of a female under the age of 12 years, T.C.A. § 39–3705.

While we do not wish to give a technical or unreasonable construction to the habitual criminal statute, neither do we feel that its terms should be broadened by implication. It is the opinion of this Court that the offense of "abusing a female child" is not synonymous with and does not encompass the offense of violating the age of consent, and that respondent's conviction for the latter offense was insufficient to establish a second specified felony conviction as required in T.C.A. § 40–2801.

Accordingly we sustain the action of the Court of Criminal Appeals in dismissing the habitual criminal count of the indictment against the respondent.

It results that the judgment of the Court of Criminal Appeals remanding the case for a new trial on the homicide charge is reversed, and the judgment of the trial court with respect thereto is reinstated. The judgment of the Court of Criminal Appeals with respect to the habitual criminal charge is affirmed. Costs will be taxed to the respondent.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.