IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 5, 2002

## STATE OF TENNESSEE v. JEROME SAWYER

**Appeal from the Criminal Court for Shelby County**
**No. 01-03778     Arthur T. Bennett, Judge**

---

**No. W2001-01923-CCA-R3-CD  - Filed August 27, 2002**

---

Convicted by a jury of the Class B felony offense of aggravated sexual battery and sentenced by the trial court to serve an incarcerative Range II sentence of eighteen years, the defendant, Jerome Sawyer, appeals and claims that the evidence insufficiently supports the verdict and that the court erroneously found him to be a Range II offender.  We disagree and affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

David L. Hamblen, Union City, Tennessee, for the Appellant, Jerome Sawyer.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alonda Dwyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Recounting the evidence in the light most favorable to the state, the defendant was described as a family friend of Tonya Bobo and her three children and as "god-daddy" to C.B., one of Ms. Bobo's daughters and the victim in this case.  On October 22, 1999, the defendant came to the Bobo residence at 858 Alaska Street about 5:30 in the afternoon.  Tonya Bobo was at work.  Present in the house were C.B., age six; her sister, N.C., age seven; her brother, C.C., age eight; Felicia Pullen, nineteen, who resided at the house with Ms. Bobo's brother and who was "babysitting" Ms. Bobo's children at the time; and Ms. Pullen's small child.

According to Ms. Pullen, the defendant went to C.B.'s bedroom to help her clean out her closet and throw away old shoes.  Ms. Pullen testified that the defendant called C.B. to come to the bedroom, and he sent N.C. and Ms. Pullen's child out of the bedroom and into the living room, where Ms. Pullen was watching television.  A few minutes later, Ms. Pullen sent N.C. back to check

on C.B., and N.C. returned to report that C.B. and the defendant were reading a book; however, C.C. went to the bedroom door, peeked inside, and came back to the living to report to Ms. Pullen that the defendant had C.B. playing with his "privacy." Ms. Pullen "went and got her and . . . told her to sit on the [living room] couch until her mother got home." C.B. then went into the kitchen to get a bowl of cereal. Afterward, the defendant called C.B. back into the bedroom. Ms. Pullen sent N.C. to the bedroom to retrieve C.B. The defendant then emerged from the bedroom, and Ms. Pullen noticed via a bulge in his pants that his penis was erect. The defendant returned to the bedroom where C.B. was, and after five or ten minutes, Ms. Pullen saw C.B. "[shoot] across the hall with nothing on" and go into the bathroom.

At some point during these events, Ms. Pullen called Ms. Bobo at work, but Ms. Bobo had already left work to go home.

Ms. Pullen testified that, when the defendant arrived at the home, C.B. was dressed in the jeans and shirt that she had worn to school. When she emerged from the bathroom into which she had "shot" unclothed, she wore a dress with Dalmatians on it. She came into the living room and seemed about to cry. The defendant came into the living room and asked C.B., "[W]hat you got that frown on your face for? You better not tell nobody. I ain't going to buy nothing else."

Ms. Bobo's male friend, Gus, arrived at the residence at this time, and the defendant departed. Gus engaged C.B. in a conversation, and Ms. Pullen testified that C.B. stated that the defendant made C.B. "touch his thing" and that he touched her "down there." Ms. Pullen quoted C.B. as saying that "white stuff" had come from the defendant's penis. Ms. Pullen testified that she and Gus found C.B.'s jeans in the bedroom. She found "white stuff" on the zipper area of the jeans and observed that the jeans were wet in this area.

C.B. testified that when she first went into her bedroom with the defendant he unzipped his pants and took out his "nut-nut," which was "big." The defendant asked her to touch it, but she declined. He touched her in her vaginal area and on her bottom over her clothes. When he pulled her toward him, he pulled down her pants and underwear and touched these areas. C.B. testified that she saw something on her pants that looked like milk, but she denied telling anyone that she saw the "white stuff" come from the defendant. After she went to the bathroom to wash, she put on her pajamas, which she was wearing when her mother came home.

N.C. testified that the defendant came to the home to help her and C.B. clean the old shoes out of their closet. C.B. and the defendant were in the bedroom alone, and N.C. went to the door and peeked inside. She saw the defendant pulling on C.B.'s arm. She heard C.B. tell him to quit. Later, she saw C.B. go into C.C.'s room wearing a towel. N.C. saw C.B. emerge from the bathroom wearing jeans and did not see her wearing pajamas. C.B. looked mad. The defendant later came out of the bedroom and told C.B. not to look at him "like that." The defendant, who had something "poking" out in his pants, then left the home.

Tonya Bobo testified that she was at work on the evening of October 22, 1999. She was scheduled to work until 10:00 p.m., but her boyfriend, Anthony Augustus, called early in the evening and asked her to come home. Ms. Bobo left work and arrived home about 7:00 p.m. She found C.B. wearing a dress. C.B. told Ms. Bobo what happened, and Ms. Bobo called the police. When the officers arrived, Ms. Bobo showed them C.B.'s jeans and underwear that had been left laying in the floor. The officers collected the clothing and took C.B. to Memphis Sexual Resource Center.

C.B. was examined at the center, after relating to the nurse that her godfather had touched her in front and on her bottom. The examination was normal except for some red lines in the vaginal area and some swelling around the anus. Even though the medical expert testified that these limited findings were consistent with a complaint of digital assault, she opined that the red lines could have been signs of irritation caused by fecal material that had not been cleaned from C.B.'s anal area and that the anal swelling was "nonspecific." She further testified that the laboratory report on C.B.'s jeans reflected that no semen was present on the jeans.

## I. Sufficiency of the Evidence.

On this evidence, the defendant was convicted of aggravated sexual battery. As is pertinent to this case, a person commits aggravated sexual battery who has unlawful sexual contact with a victim who is less that thirteen years of age. Tenn. Code Ann. § 39-13-504(a)(4) (1997).

> "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

*Id.* § 39-13-501(6) (1997).

In his challenge to the legal sufficiency of the convicting evidence, the defendant essentially impugns the credibility of the state's witnesses. He argues that the various inconsistencies among the witnesses' and the victim's accounts of the events of October 22, 1999 belie the credibility of the witnesses and undermine any confidence in the jury's verdict.

Unfortunately for the defendant, our response to that genre of attack on the sufficiency of the evidence is worn smooth and well grooved. A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *State v. Townsend*, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978). Moreover, a verdict against the defendant removes

the presumption of innocence and raises a presumption of guilt on appeal. *State v. Grace*, 493 S.W. 2d 474, 476 (Tenn. 1973); *Anglinv. State*, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977). The defendant has the burden of overcoming this presumption. *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, when the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13; *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 2782 (1979); *see also State v. Williams*, 657 S.W.2d 405 (Tenn. 1983).

Applying these principles, it is obvious that the state introduced evidence that, when accepted and accredited by the jury, established the defendant committed the elements of aggravated sexual battery. The logical upshot of the defendant's argument about witnesses' inconsistent accounts is merely that some or all of the state's witnesses testified untruthfully and not necessarily that the defendant did not commit the crime. In this circumstance, we cannot usurp the jury's responsibility and power to decide who is to be believed and how much weight is to be afforded various witnesses' accounts. The trial, not the appeal, is the threshing arena for winnowing out the chaff from the sometimes jumbled mass of evidence. Because the evidence is legally sufficient to support the verdict, we reject the defendant's challenge.

## II. Sentence Range Determination.

In his next issue, the defendant complains that the trial court erred in sentencing him as a Range II offender; he is aggrieved that, because the state did not properly file an adequate notice of enhanced sentencing, he should have received a sentence in Range I.

Our sentencing law establishes ranges of sentences in criminal cases. "The sentence for a standard offender is within Range I," Tenn. Code Ann. § 40-35-105(b) (1997); however, the defendant was sentenced in Range II, which is reserved for "multiple offenders," persons who have received a "minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes," *id.* § 40-35-106(a) (1997). When a prosecutor determines that a defendant's record of prior convictions warrants enhancement of the sentence by placing him in a range higher than Range I, the prosecutor "shall file a statement thereof with the court and defense counsel not less than then (10) days before trial or acceptance of a guilty plea . . . . " *Id.* § 40-35-202(a) (1997). "If the notice is filed later than [ten days prior to trial], the trial judge shall grant the defendant, upon motion, a reasonable continuance of the trial." Tenn. R. Crim. P. 12.3(a).

In the present case, the parties agree that the defendant was originally indicted for the October 22, 1999 event in indictment number 00-04542. On or about December 27, 2000, the state filed its section 40-35-202(a) notice in case number 00-04542, setting forth the defendant's prior convictions of aggravated sexual battery. On April 4, 2001, a few days before the trial began, the

grand jury returned a new single-count indictment number 01-03778, the indictment on which the defendant was tried and convicted. At the sentencing hearing, the parties agreed that the purpose of the new indictment was to supersede the first indictment and to expand the "open" time frame of the alleged offense, but no further notice of enhancement was filed. The state voluntarily dismissed indictment number 00-04542 on May 25, 200l, after the defendant was tried and sentenced.

The defendant argues that the state failed to effectively file a notice in case number 01-03778 and that, even if the prior notice in case number 00-04542 equates to notice in case number 01-03778, the content of the notice itself is insufficient.

### a. Timing of the Notice; Absence of Notice.

The state argues that the defendant suffered no prejudice and that he should be deemed to have waived his claim due to his failure to seek a continuance. In *State v. Stephenson*, 752 S.W.2d 80, 81 (Tenn. 1988), our supreme court said that a notice not filed until the day of trial was effective "in the absence of some showing of prejudice on the part of the accused"; indeed, "[i]n the absence of a motion for a continuance, . . . any objection to the delayed notice by the State ordinarily should be deemed to have been waived." *Id.* In the present case, however, no notice at all was filed in the proceeding that went to trial; the initial issue is whether the notice filed in case number 00-04542 suffices to satisfy Code section 40-35-202(a) and Rule 12.3. Thus, we are less concerned with whether the defendant should have sought a continuance of the trial and will focus upon the efficacy of the notice filed in case number 00-04542.

In *State v. Chase*, 873 S.W.2d 7 (Tenn. Crim. App. 1993), the state's notice of enhancement to Range III was filed in the proceeding on his "first indictment" charging theft. *Id.* at 9. Subsequently, the state obtained a superseding indictment that charged two counts of theft, including the offenses that were charged in the original indictment. *Id.* No new notice of enhancement was filed. This court noted that the purposes of the notice are "to order plea-bargaining, to inform decisions concerning pleadings and to aid in trial strategy." *Id.* The court said that the "[f]ailure to file a notice of sentencing status is grounds for resentencing." *Id.* Based upon the second indictment alleging the "same offense" as charged in the first indictment, this court held that the notice filed in the first indictment "gave the defendant fair warning that the State intended to seek an enhanced punishment for that crime." *Id.* "The defendant was in no way misled or surprised." *Id.*

In the present case, the defendant contends that because the second indictment lengthened the open time frame of the sexual-offense allegation, it opened the door for the state to elicit proof of the defendant's sexual assaults upon the same victim on dates other than October 22, 1999. *See generally State v Rickman*, 876 S.W.2d 824 (Tenn. 1994) (evidence of sex crimes in addition to the crime or crimes charged in the indictment may be admitted when the indictment is not time specific and the additional evidence relates to sex crimes that occurred during the time frame alleged in the indictment). He then posits that the second indictment alleged different offenses than did the first indictment, rendering *Chase* inapplicable.

We disagree and hold that *Chase* is controlling. Even though the second indictment may have merely been a contrivance to allow C.B. to testify about three additional incidents when the defendant had sexual contact with her, both indictments alleged a time frame that encompassed October 22, 1999, and the state apparently maintained throughout the proceedings that it would elect the October 22, 1999 event as the basis for securing a conviction on the single-count indictment. We point out that, even though the second indictment may have broadened the state's field of choices from which to elect a punishable crime, only *one offense* was alleged in each indictment. In this situation, we hold that *Chase* compels the result that the defendant received notice through the notice filed in case number 00-04552.

### b. The Content of the Notice.

We now move to the defendant's claim that the notice was inadequate. The document in question announces that the state is giving notice that the defendant should be sentenced as a multiple or persistent offender and that he has been convicted of the "following offenses on the following dates, in the following courts." This notice did not then contain a listing but rather incorporated an attached FBI National Crime Information Center (NCIC) printout that shows the defendant was charged in 1987 in Shelby County on "indictments" alleging aggravated sexual battery. The notice also incorporated an attached Shelby County Sheriff's Department (SCSD) printout which amplifies the Shelby County charge information shown on the NCIC report. The SCSD report shows that the 1987 Shelby County proceedings consisted of three charges of aggravated sexual battery, but neither the NCIC nor the SCSD list communicates that the defendant received convictions on these charges.[1]

In *State v. Adams*, 788 S.W.2d 557 (Tenn. 1990), our supreme court said that the section 40-35-202(a) notice must "include factual detail supporting the status alleged, usually precise information about former convictions." *Id.* at 558. The notice in question in *Adams* merely notified that the state sought "[e]nhanced [p]unishment within the range to which the defendant would be subjected." *Id.* The notice made no reference at all to any prior convictions. *Id.* The court rejected this as an "empty notice." *Id.* at 559.

Although we agree with the defendant that the notice in the present case was lacking in "precise information about former convictions," we conclude that the notice falls in a category of "substantial compliance" recognized by *Adams. See id.* When the state substantially complies with the notice requirements, "an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." *Id.* In the present case, the defendant made no inquiry, and we are at a loss to discern prejudice from the inadequate notice. The presentence report contained information concerning the prior convictions, and at the sentencing hearing, defense counsel evinced a detailed, specific knowledge of the prior offenses. "The fact that the [defendant]

---

[1]The presentence report filed in the defendant's case reflects that, on August 24, 1987, the defendant received three convictions of aggravated sexual battery in Shelby County.

was sentenced within the proper range, based upon his prior convictions, does not establish prejudice." *State v. Gilmore*, 823 S.W.2d 566, 571 (Tenn. 1991).

Finding no reversible error, we affirm the trial court's judgment.

                                                  _____

                                                  JAMES CURWOOD WITT, JR., JUDGE