# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 4, 2002 Session

## STATE OF TENNESSEE v. ANTONIO J. MITCHELL

### Appeal from the Criminal Court for Shelby County
### No. 99-01172     Chris Craft, Judge

---

### No. W2000-02721-CCA-R3-CD - Filed September 4, 2002

---

The defendant, Antonio Mitchell, appeals his Shelby County jury conviction of attempted first-degree murder and claims that the evidence is insufficient to sustain the conviction. We disagree and affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

Steve Temple, Memphis, Tennessee, for the Appellant, Antonio J. Mitchell.

Paul G. Summers, Attorney General & Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jerry Harris, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The defendant was convicted of attempting the first-degree murder of Tamarcus Pittman. On June 7, 1998, Mr. Pittman, injured with a gunshot wound to his thigh, drove his car to a Memphis hospital. Also in the car was Paul Spencer, who had been fatally wounded by a gunshot that penetrated his lungs and heart. The defendant was indicted and tried for both the attempted first-degree murder of Mr. Pittman and the first-degree murder of Mr. Spencer. Although the jury was unable to reach a verdict on the charge involving Mr. Spencer, it convicted the defendant of the attempt to murder Mr. Pittman.[1] The trial court imposed a Range I sentence of 21 years. The defendant's sole issue on appeal is whether the convicting evidence is legally sufficient to support the verdict.

---

[1] Based upon allegations in the defendant's motion for new trial, we glean that, before the defendant was sentenced, he was retried and acquitted by a jury on the Spencer first-degree murder charge.

Our rules for reviewing sufficiency of the evidence issues are well established. A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *State v. Townsend*, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973); *Anglin v. State*, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977). The defendant has the burden of overcoming this presumption. *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, when the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13; *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 2782 (1979).

As is pertinent to the offense for which the defendant was convicted, attempted first-degree murder is committed by one who acts intentionally and premeditatedly to kill another and believes the conduct will cause the result without further conduct on the person's part. Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 2001) (elements of first-degree murder); *id.* § 39-12-101(a)(2) (1997) (definition of "attempt").

The victim, Tamarcus Pittman, testified that he and Paul Spencer went to Mega Market on Covington Pike on Saturday, June 6, 1998. They had a brief encounter with the defendant, whom the victim had known in the past. In a statement the victim gave to the police, he said the encounter occurred inside Mega Market, but the victim testified at trial that the encounter occurred outside the store. The victim did not elaborate upon the nature of the encounter. The defendant was driving his gold-brown, four-door Oldsmobile Cutlass that sported "Cadillac rims." Mega Market is located within a short distance of Covington Pike Mazda, where the defendant was a member of the sales staff.

The victim testified that, on Sunday June 7, 1998, Paul Spencer and the victim left the victim's residence at about 11:00 a.m. Mr. Spencer was driving the victim's Chevrolet, and the victim rode in the passenger seat. At about 1:00 p.m., they were headed east on Raleigh-La Grange Avenue, driving in the left or inside lane. The victim saw the defendant driving in the opposite direction on Raleigh-La Grange in his gold-brown Cutlass. Shortly thereafter, the defendant turned around and came up swiftly behind the victim's car, overtaking it from the middle lane, to the victim's right. The victim testified that the defendant wore a white shirt and tie and had a tag, perhaps a handicap placard, hanging from his rear-view mirror. As the defendant pulled up along the right side of the victim's car, the victim saw him point an AK-47 assault weapon out the window toward the victim's car. The defendant then fired a burst of six or seven shots into the victim's car,

striking both occupants. The victim, who was wounded in the thigh, noticed that Mr. Spencer was unable to drive the car. The victim commandeered the car and drove to the hospital.

The victim testified that neither he nor Mr. Spencer was armed.

When officers arrived at the hospital, they found the victim's car with bullet holes in the passenger side. Later in the day, the victim took the officers to the location on Raleigh-La Grange where the shooting occurred. In the street, the officers found six spent shell casings of the type and caliber fired by an AK-47. The location was about a mile from Covington Pike Mazda.

Based upon the victim's identification of the defendant as the shooter, officers went to the defendant's home, where he resided with his wife and three children. After his arrest and placement in a police cruiser, the defendant remarked, "My life's over now." The attending officer testified that he had not previously told the defendant the nature of the charge for which he was being arrested.

Paul Spencer died of a gunshot wound that entered his body on his left side and traveled through vital organs toward the right side of his body.

The defendant's wife testified on his behalf that, on the morning of June 7, 1998, she attended a meeting at her place of employment. The defendant stayed home and kept the children. Ms. Mitchell returned home at midday, and the defendant left to go to work at Covington Pike Mazda at about 12:30 or 12:40 p.m. He returned from work about 6:30 p.m. She was unaware that the defendant owned or possessed any firearms.

The defendant produced three witnesses who were members of the sales staff at Covington Pike Mazda. These witnesses consistently testified that each of them served on shifts with the defendant on both Saturday, June 6, and Sunday, June 7, 1998. Although they could not account for the defendant's continued presence on the sales lot on either day, none of them was aware of him leaving during the shift, and they testified that salespersons were not allowed to leave the business during Saturday, the dealer's busiest sales day. The witnesses were familiar with the defendant's gold-brown Cutlass, and none of them recalled seeing a tag or a handicap placard hanging from his mirror. The witnesses agreed that, during June 1998, the sales staff wore solid-color golf shirts at work and did not wear dress shirts with ties. On Sundays, the sales staff reports at 1:00 p.m., when the business opens. One of the salesmen testified that, on Sunday, June 7, he saw the defendant arrive at work at 1:15 p.m. Generally, the sales staff witnesses noticed no unusual behavior or demeanor on the defendant's part after he arrived at work on June 7.

The defendant did not testify at trial.

The defendant points to several discrepancies in the victim's testimony. The victim testified that he and Mr. Spencer left the victim's home at 11:00 a.m. on June 7, but he was unable to account for the lapse of two hours until the 1:00 p.m. shooting, other than to say that they were

"riding around." The defendant notes that the victim gave inconsistent accounts about where the June 6 encounter with the defendant occurred. Also, in a pretrial statement, the victim indicated he did not know what the defendant was wearing on June 7, but at trial, he testified that the defendant wore a white shirt and tie. The defendant points to the testimony that salesmen at Covington Pike Mazda wore golf shirts and not dress shirts and ties in June 1998.

The defendant also touts the absence of any weapon in his home or car. Finally, the defendant points to physical evidence which he says belies the victim's account of the shooting. The bullet that killed Mr. Spencer entered his body from the left side and traveled to the right side; the bullet's path is at odds with the victim's description that the defendant shot from the right side of the victim's car while Mr. Spencer was driving. The defendant posits that the concentration of blood on the right side of the victim's car indicates that the victim was driving at the time of the shooting.

Although we can understand the defendant's exuberance in highlighting conflicts in the evidence and his belief that the victim was not a credible witness, we are constrained to allow the trier of fact to determine the credibility and weight of the evidence and to resolve factual conflicts. The trial, not the appeal, is the arena for resolving these issues. When we discern that evidence was presented that reasonably establishes that the defendant committed the offense, as we do in this case, our task is concluded. Viewing the evidence in the light most favorable to the state and indulging the state the benefit of reasonable inferences that may be drawn from the evidence, the evidence is sufficient to support a verdict of attempted first-degree murder.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE